Beekman, J.
This action was brought for the foreclosure of a mechanic’s lien filed by the plaintiffs against certain property of which the defendant Martha Gunn claims to be the owner. The defendants Hussey were made parties defendant as subsequent lienors. The plaintiffs’ lien was filed on June 6,1894, at 12 o’clock and 14 minutes in the afternoon, and was for the sum of $1,560.82. The defendants’ lien was for the sum of $1,400, and was filed on June 7,1894, at 9 o’clock and 35 minutes in the forenoon. The defendant Martha Gunn acquired the premises by deed from her husband dated on the 6th day of June, 1894, and recorded on the following day, but not until after the lien of the defendants Hussey had been filed. She and her husband answered the com-' plaint, putting in issue the allegations in respect to the work done and the amount due on the contract, the effect of which, if maintained by proof, would be to defeat the plaintiffs’ claim. The defen-' dantsHussey, although served with the summons and complaint, did not appear, and were therefore in complete default on August 17, 1894, when an order was made, on motion of the attorney for Martha Gunn, on the pleadings and affidavits, requiring all of the defendants to show cause, on a day fixed therein, why an order should not be made by the court “ fixing and determining the amount of money to be deposited herein, and canceling and discharging of record the various mechanics’ liens referred to in said affidavits, and in the complaint herein, and why the lis pendens filed in this action should not also be canceled and discharged of record, and why said defendant should not have such other or further relief in the premises as to the court may seem just and equitable.” The affidavits referred to were made by the attorney for Martha Gunn and by YYilliam Gunn, respectively. The one made by the attorney sets forth the status of the action, and the reason for the application is stated to be “ that the defendant Martha Gunn desires an order of this court fixing the amount which shall be deposited by her in satisfaction of the mechanics’ liens heretofore filed herein, and which are involved in this action.” The affidavit of William Gunn stated the various liens in their order of' priority, and alleges that the only ones which are claimed to be-liens upon said premises in the hands of the defendant Martha Gunn are those of the plaintiffs and the defendants Hussey. It. may be here stated that there were several other liens upon the-premises, subordinate to the two above mentioned, but which are-not the subject of discussion. The defendants Hussey, not having appeared in the action, were personally served with the motion papers. On the return day none of the lienors appeared except the plaintiffs, who made no opposition beyond claiming that the defendant should deposit at least $1,930.59 against the cancellation of plaintiffs' lien and the lis pendens. Upon these papers an order was made and entered at special term on August 24, 1894, direct *93 ing the defendant to deposit with the clerk of the city and county of New York the sum of $1,800, “to be held and retained by said •clerk to pay any judgment of this court which may be obtained by the plaintiffs in this action against the property mentioned and •described in the complaint in this action.” The balance if any, was directed to be held by said clerk for and on account of said defendant Martha Gunn, subject to the further order of this court. It was further ordered that upon such deposit being so made the clerk should cancel and discharge each and every of the mechanics’ liens mentioned in the moving papers, which were also specifically enumerated in the order, and which included the lien of the defendant Hussey. The order also provided that upon such deposit being made the Us pendens should “cease to be a lien or incumbrance upon or of any force or effect whatever against the premises therein described,” and that any right, interest, or claim of any of said defendants who had filed mechanics’ liens against said premises should be transferred from said premises to said fund. The total amount of all the liens affected by this order was $3,967.82.
The money was deposited as directed, and the liens in question were canceled by the county clerk. Thus, upon a deposit of not more than enough to cover the plaintiff's lien, and which was devoted to the payment of any judgment they might recover, the lien of the defendants Hussey, which was conceded to have priority over the deed to Martha Gunn, was canceled, as well as all others subsequently filed, without any equivalent deposit. About a month afterwards an application was made by the defendants Hussey to have their default in appearing and pleading opened, which was granted. They appeared and answered, and cross answers to their plea were interposed by the defendants Martha Gunn and William Gunn. Thereafter, and on the 15th day of October, 1894, an order was duly entered discontinuing the action as to all of the other lienors whose liens had been so canceled. On November 9,1894, an order was made, on motion of the defendants Hussey, requiring the plaintiffs and the deféndantg Gunn to show cause, at a time fixed therein, why an order should be made amending the order of August 24, 1894, by striking out the direction for the cancellation of the Hussey lien, and vacating and setting aside said order as to them, and why a supplemental summons should not issue bringing in a purchaser of a portion of the property affected by the lien, who became such seven days after the order of cancellation was made, and others deemed to be proper parties, in view of the changed conditions following upon the order last named. This order to show cause was made upon the pleadings and an affidavit of Frederick Hussey, in which he states that he had refrained from appearing on the motion to cancel, relying upon representations made to him by William Gunn that his claim would be paid, and that it was not until he had consulted with his present attorney that he was advised and discovered that the order of cancellation did not protect his interests and was void. On the return day an answering affidavit of William Gunn was read, which questioned the assertion as to the representations above mentioned, and also, at *94 considerable length, challenged the validity of the indebtedness-upon which the Hussey lien rested. Other affidavits were presented, mainly for the purpose of showing loches on the part of the Hussey defendants. The papers show that the latter had been advised of the effect of the order of August 24th upon their lien when their application for leave to appear and answer was granted,, a month later. Their motion to vacate the order of cancellation, which was heard before the judge who had made it, was denied, on the ground that the Husseys having .failed to appear and answer, and having also made default in appearingon the motion, had no standing in the action, and that the court, therefore, had power and jurisdiction to relieve the premises from the operation of the lien filed by them without requiring a deposit of money for their benefit; also on the ground of loches on their part in failing-to move earlier for relief. From the order entered denying the motion an appeal is now taken.
We do not think the court below had the power to make the order ünder which it was assumed to cancel the lien in question. The statute which authorizes the filing of a mechanic’s lien also-provides for the method of its enforcement by action, and specifies the conditions under which it may be discharged. Chapter 342, Laws 1885, and amendments. Section 24 states six separate and distinct w’ays in which such a lien may be discharged.' The only one material to the present inquiry is contained under subdivision 3 of the section:
“ After the commencement of the action, by the deposit with the clerk of the county of such sum of money as in the judgment of the court, after due notice to all claimants or parties to the action, will be sufficient to pay any judgment which may be recovered against the property. In case the deposit of money is made with the county clerk, as provided in subdivisions 2 and $ of this section, the same shall be repaid by said clerk to the party making such deposit, or his assigns upon the lien or liens being-discharged by the claimants who have.filed a notice or notices of lien or liens.”
The power of the court to authorize.the discharge of such a lien is limited to the cases specified in the statute, and in all cases the-proceeding pointed out which conditions the exercise of the power must be strictly followed. Fettrich v. Totten, 2 Abb. Pr. (N. S.) 264; Dowdney v. McCullom, 59 N. Y. 367. In the latter case the court, referring to the lien law of 1863, says (page 372): “The proceeding is entirely statutory, and the court can exercise no power except such as is conferred by statute.” Unless, then, the court below kept within the provisions of subdivision 3 above quoted, the order directing the discharge of the lien in question was void. We think there was such a radical departure from the requirements of the statute in making the order that it cannot be supported. The power of the court to discharge is made dependent upon the deposit of money with the county clerk, which thus takes the place of the land, and becomes subject to the lien. The discharge of the lien was not intended to destroy it, but to lift it from the real estate, and transfer it to something else,-—a deposit *95 of money which is intended to be a security reasonably sufficient for the purpose. The object is to afford the person against whom the lien is filed an opportunity of disposing of his property which the continued charge of the .lien thereon, during perhaps a protracted litigation, would prevent. The provision is a wholesome one, but could be a just one only when associated, as it is, with the counter requirement that security approximately equivalent to that which is taken away should be given. Hence we find the legislature authorizing the discharge in cases similar to the one at bar upon a deposit which “ will be sufficient to pay any judgment which may be recovered against the property ” by the lienor. In view of the plain purpose of the provision, the judgment to be exercised by the court, in determining the amount of the deposit, is one which must assume and proceed upon the correctness of the lienor’s claim, and is confined to an estimate of the amount which, in case the claim is established by judgment, will fairly provide for its payment. The validity of the claim upon which the lien rests cannot be litigated upon such a motion. That can only be done upon the trial of the action. To hold the contrary would obviously defeat the very object which the provision was intended to secure; that is, the immediate relief of the property from the consequences of a protracted litigation, which would thus ensue upon the motion instead of upon the regular trial of the action. If the court may, in ascertaining the amount of deposit, inquire into the merits of the lien, it may determine that there is no claim which will support the lien; that judgment will, therefore, be ultimately rendered against the lienor, and that, consequently, no sum of money should be deposited, as no judgment could be recovered by him against the property,—a conclusion quite contrary to the plain mandate of the statute. We are therefore of the opinion that the court below, in ordering the cancellation of the lien of the defendants Hussey without any deposit, acted in excess of its power, and "that the order was void.
The fact that these defendants, although served with notice of the same, did not appear on the motion, does not lend any support to the order, Apart from the question whether such a default could, under any circumstances, estop a" party from attacking a void order, these defendants had no notice from the papers that any such thing as the cancellation of their lien without a deposit was contemplated, nor were they bound to assume that any such result was among the possible outcomes of such a motion. They were, on the contrary, entitled to expect that the demand of the statute would bé complied with, and a deposit made which would secure to them the benefit of the most favorable judgment which could be rendered in their behalf upon a trial of the action. The fact that they were then in default in pleading made no difference. They might subsequently come in, as they actually did, under leave of the court, and participate actively in the litigation. In short, for any of the purposes connected with its discharge under the provisions of the statute in question, the lien is to be considered good until final judgment is pronounced against it.
We do not think there is any question of loches involved in the *96 case, or, if there were, that the respondent Gunn, who procured such an order, is entitle to claim any benefit therefrom. The intervention of the rights of third parties, claimed to be a reason for denying the relief sought, did not result from the alleged loches of the appellants, as the conveyance made of a portion of the property took place only one week after the order complained of was entered. Further, in this connection, it was the plain duty of the purchaser to examine the order under which the liens were canceled. Had she done so, she would have discovered the defect of authority, and that in contemplation of law neither the lien nor the lis pendens had been discharged. What we have said in reference to the lien applies equally to the portion of the order under which it was attempted to cancel the lis pendens. The lien law provides for the filing of this notice, and gives to every lienor, whether plaintiff or defendant, an equal benefit from it. Section 6, c. 342, Laws 1885. The statute does not authorize the court to cancel it, nor does section 1674 of the Code of Civil Procedure, assuming its application to a lis pendens -filed under the mechanic’s lien law, confer any such authority in such case as this. Such a notice can only be canceled in the cases in which the statute authorizes it Beman v. Todd, 124 N. Y. 114-116 ; 35 St. Rep. 214. It follows from what we have said that the motion to vacate the portions of the order objected to should have been granted. We do not consider that those who acquired interests in the property after the oi’der complained of was made are necessary parties, as the lien and lis pendens were really unaffected by the unauthorized attempt to cancel them; but as it is certainly just that they should, under the circumstances, have an opportunity to litigate the lien of the defendants Hussey, we feel disposed, in the interests of justice, to allow them to be brought in, although they are not before the -court asking it. The order appealed from should be reversed, and the motion granted, with costs of the appeal.
All concur.